## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LANDARE HINES,

       Petitioner,

     v.

PENNSYLVANIA ATTORNEY
GENERAL OFFICE, *et al.*,

       Respondents.

No. 4:20-CV-00029

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 12, 2021

*Pro se* petitioner Landare Hines ("Hines"), who is incarcerated in the State Correctional Institution-Houtzdale ("SCI-Houtzdale"), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a criminal conviction and sentence in the Centre County Court of Common Pleas. The petition is ripe for disposition. For the reasons that follow, the petition will be denied.

## I. BACKGROUND

The state courts of Pennsylvania have succinctly summarized much of the relevant factual background and procedural history.[1] The facts of the case began in March 2014, when police began investigating whether Hines and two other individuals, Tiffany Ingram ("Ingram") and Sarah Frank ("Frank"), were selling

---

[1] *See Commonwealth v. Hines*, No. 1519 MDA 2018, 2019 WL 1261755, at *1-5 (Pa. Super. Ct. Mar. 18, 2019); *Commonwealth v. Hines*, No. 1730 MDA 2015, 2016 WL 5799627, at *1 (Pa. Super. Ct. Oct. 4, 2016).

heroin out of a residence in State College, Pennsylvania.[2]  During the investigation, Frank delivered heroin to a confidential informant on two occasions and to an undercover officer on another occasion.[3]  Based on these deliveries and additional information obtained during the course of the investigation, the police obtained a warrant to search Ingram's residence.[4]  Police executed the search warrant on March 28, 2014 and discovered Hines inside the residence.[5]  Hines was taken into custody, and a search of his person revealed a small amount of marijuana and a key to a safe in the residence.[6]  Police searched the safe and found narcotics inside the safe.[7]  A subsequent search of the residence revealed more narcotics, drug paraphernalia, and evidence that Hines was residing there.[8]

Hines was charged with various drug related offenses in the Centre County Court of Common Pleas.[9]  A jury trial commenced in March 2015, and during the trial the evidence against Hines included, *inter alia*, the testimony of Ingram, Frank, and Richard Young, an individual who was incarcerated on unrelated charges and shared a cell with Hines.[10]

---

[2]   *Hines*, 2016 WL 5799627, at *1.
[3]   *Id.*
[4]   *Id.*
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   *Id.*
[9]   *Id.*
[10]   *Hines*, 2019 WL 1261755, at *4.

Ingram and Frank were both facing criminal charges for their own involvement in the drug operation at the time they testified against Hines.[11] Ingram testified that Hines was in charge of the drug operation, that he brought the drugs in, and that he controlled the money.[12]  Frank testified that she was addicted to heroin and that she was selling heroin on Hines's behalf so that she would have money for heroin.[13]  Both Ingram and Frank testified that they were not promised a reduced sentence in exchange for their testimony against Hines.[14]

Young testified about conversations that he and Hines had regarding Hines's drug operations.[15]  According to Young's testimony, Hines said that he regularly brought large amounts of drugs from the Harrisburg area to State College, weighted and packaged the drugs, stored them in a safe in his residence, and then gave the drugs to Frank and others for distribution.[16]  Young also testified that Hines had asked him to pass a note to Ingram asking Ingram to take the blame for the drug operation and that Hines had threatened Frank for cooperating.[17]  Young testified that he was not offered anything from the prosecution in exchange for testifying against Hines and that he chose to testify against Hines because he heard

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

that Hines had physically abused Ingram's three children and that he had threatened Frank.[18]

At the close of the jury trial, Hines was convicted of possession of narcotics with intent to deliver, possession of a controlled substance, possession of a small amount of marijuana for personal use, possession of drug paraphernalia, and conspiracy to commit possession with intent to distribute.[19]  The court sentenced him to an aggregate term of 8-16 years of imprisonment on May 21, 2015.[20]

Hines filed a direct appeal of his conviction and sentence to the Pennsylvania Superior Court, raising four arguments on appeal.[21]  The Superior Court affirmed the judgment of sentence on October 4, 2016.[22]  Hines did not appeal to the Pennsylvania Supreme Court.

On December 8, 2016, Hines filed a petition for state collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA").[23]  Hines then obtained counsel and filed an amended PCRA petition through counsel on May 15, 2017.[24] The Court of Common Pleas denied the PCRA petition on August 14, 2018, and

---

[18]  *Id.*
[19]  *Hines*, 2016 WL 5799627, at *1.
[20]  *Id.*
[21]  *Id.*
[22]  *Id.* at *6.
[23]  *Hines*, 2019 WL 1261755, at *1.
[24]  *Id.*

Hines appealed to the Pennsylvania Superior Court.[25]  Hines raised the following four arguments on appeal:

> 1. Did the Court err and abuse its discretion when it found there was insufficient evidence here to find an agreement, promise, or implication of leniency was given to either Ingram, Frank, or Young?  In doing so, did it fail to consider the prosecutor's testimony, finding that each witness'[s] hope for consideration based on the value of their testimony came solely from their attorneys, as opposed to from the prosecutor? Did the Court apply the incorrect legal standard, abuse its discretion when it found any implication of leniency [was] immaterial, and fail to consider the question of materiality cumulatively?
>
> 2. Did the Court err and abuse its discretion, violating Appellant's right to due process of law when it granted Young's attorney[']s motion to quash a subpoena?
>
> 3. Did the Court err and abuse its discretion by denying Appellant's claim of ineffective assistance of counsel for failing to cross-examine Young on his full criminal record in order to establish bias in favor of law enforcement?  In doing so, did the Court apply the incorrect standard under *Strickland v. Washington*, 466 U.S. 668 (1984)?
>
> 4. Did the Court err and abuse its discretion by denying Appellant's claim of ineffective assistance of counsel related to the accomplice jury instructions?  In doing so, did the Court apply the incorrect prejudice standard for a claim of ineffectiveness?[26]

The Superior Court affirmed the denial of the PCRA petition on March 18, 2019, and Hines did not appeal to the Pennsylvania Supreme Court.[27]

---

[25] *Id.*
[26] *Id.* at *1-2.
[27] *Id.* at *7.

Hines filed the instant petition on January 8, 2020.[28]  Hines argues that he is entitled to habeas corpus relief because the Commonwealth failed to turn over impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[29] He ostensibly raises four other claims in support of his petition, but does not state what these claims are and simply implores the Court to "view attachments" and "view attached."[30]  None of the attachments to the petition clarify what Hines's other four arguments are.[31]  Respondents responded to the petition on April 27, 2020.[32]  Hines did not file a reply brief in support of the petition, and the deadline for doing so has expired.  Accordingly, the petition is ripe for the Court's review.

## II.   DISCUSSION

At the outset, I will deny Hines's petition to the extent that it attempts to raise any arguments other than his *Brady* argument.  Federal courts may not issue writs of habeas corpus based on their own freestanding determination that a state court has applied federal law incorrectly: the petitioner has the burden to show that the state court's decision was unreasonable or contrary to clearly established federal law.[33]  Hines's invitations to "view attachments" and "view attached"

---

[28]   *See* Docs. 1-2.
[29]   Doc. 2.
[30]   *See* Doc. 1 at 5-10.
[31]   *See* Docs. 1-2.
[32]   Doc. 9.
[33]   *Blystone v. Horn*, 664 F.3d 397, 417 (3d Cir. 2011) (citing *Price v. Vincent*, 538 U.S. 634, 641 (2003)).

plainly fail to satisfy this burden, as it is not clear from the petition what arguments Hines is attempting to make, let alone why those arguments would entitle him to habeas corpus relief.

Turning to the purported *Brady* violation, I note that this claim was adjudicated on the merits in Pennsylvania state court and is accordingly governed by the substantive standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[34]

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet."[35]  Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction through appeal."[36]  "Federal habeas courts must defer

---

[34] 28 U.S.C. § 2254(d).

[35] *Mays v. Hines*, 592 U.S. __, 141 S. Ct. 1145, 1149 (2021) (quoting *Harrington v. Richter*, 562 U.S. at 86, 102 (2011)).

[36] *Harrington*, 562 U.S. at 102-03 (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)).

7

to reasonable state-court decisions,"[37] and may only issue a writ of habeas corpus when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement."[38]

Hines's claim in this case alleges a *Brady* violation. In *Brady*, the Supreme Court held that the government has a duty to disclose to a criminal defendant any evidence that is favorable to the defendant and material either to guilt or punishment and that suppression of such evidence violates the defendant's right to due process.[39] A *Brady* violation occurs when (1) evidence is withheld from the accused, either willfully or inadvertently; (2) the evidence is favorable to the accused, either because it is exculpatory or because it is impeaching; and (3) the withholding of the evidence causes prejudice to the accused.[40] The prejudice prong is satisfied if the evidence is "material," that is, "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."[41] "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial."[42]

---

[37] *Dunn v. Reeves*, 594 U.S. __, 141 S. Ct. 2405, 2407 (2021).

[38] *Mays*, 141 S. Ct. at 1149 (quoting *Harrington*, 562 U.S. at 102).

[39] *Brady*, 373 U.S. at 87.

[40] *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *United States v. Lacerda*, 958 F.3d 196, 218 (3d Cir. 2020).

[41] *Turner v. United States*, 582 U.S. __, 137 S. Ct. 1885, 1893 (2017) (quoting *Cone v. Bell*, 556 U.S. 449, 469-70 (2009)).

[42] *Id.* (internal quotation marks omitted) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Hines argues that the Commonwealth committed a *Brady* violation in this case when it failed to disclose that Ingram, Frank, and Young received consideration from the Commonwealth for their testimony against him.[43]  The Superior Court considered this claim on the merits and denied it.[44]  The court did not determine whether the evidence at issue was impeachment evidence that would be subject to the *Brady* disclosure requirement because the court concluded that Hines had failed to show "that the result of the proceeding would have been different if the evidence had been produced."[45]

The court noted that Hines's trial counsel thoroughly impeached the credibility of Ingram, Frank, and Young on cross-examination.[46]  Specifically, counsel elicited testimony from Young that Young had eight prior *crimen falsi* charges, that Young may have stolen a letter from Hines while the two were in prison, that Young's bail had been reduced in exchange for testifying against Hines, and that Young was allowed to begin serving time on his state sentence in exchange for testifying against Hines.[47]  Counsel elicited testimony from Ingram that she was testifying against Hines because she was hoping to receive a lesser sentence for her own offense and because she did not want to take full

---

[43]  Doc. 2 at 4.
[44]  *Hines*, 2019 WL 1261755, at *2-5.
[45]  *Id.* at *4.
[46]  *Id.*
[47]  *Id.*

responsibility for the drug enterprise when she was not fully responsible for it.[48]
Counsel also elicited testimony from Frank that her bail had been reduced in
exchange for testifying against Hines.[49]

The court also noted that there was "overwhelming physical evidence"
connecting Hines to the drug operation, including the fact that Hines was in
possession of a key to the safe where a large quantity of the drugs were found and
the evidence that Hines was living at the residence at the time the warrant was
executed.[50]  "Thus," the court concluded, "we cannot find that there is a reasonable
probability that the result of Appellant's trial would be different if the disputed
evidence had been produced."[51]

Hines argues that the state court's determination was contrary to clearly
established federal law because the Court of Common Pleas stated that PCRA
relief would only be available for a *Brady* violation "if the violation so undermined
the truth-determining process that no reliable adjudication could have occurred."[52]
Hines argues that the correct standard is not whether the violation "so undermined
the truth determining process that no reliable adjudication could occur," but rather

---

[48]  *Id.*
[49]  *Id.*
[50]  *Id.* at *5.
[51]  *Id.*
[52]  Doc. 2 at 4.

whether there is a "reasonable probability of a different result where the state['s] evidentiary suppression undermines confidence in the outcome of the trial."[53]

Hines states the correct legal standard, but his argument is misplaced because it seeks habeas corpus relief based on an error purportedly made the Court of Common Pleas in resolving his PCRA petition.  A federal court reviewing a habeas corpus petition reviews the "last reasoned decision" of the state courts that addressed the petitioner's claim.[54]  Here, the last reasoned decision addressing Hine's *Brady* claim was the Superior Court's PCRA decision.[55]  Thus, it is immaterial whether the Court of Common Pleas applied the correct legal standard: the relevant question for this Court is whether the Superior Court's decision was unreasonable or contrary to clearly established federal law.[56]

Having reviewed the Superior Court's decision under that standard, we conclude that it was not unreasonable or contrary to clearly established federal law. The Superior Court concluded that it could not find "that there [was] a reasonable probability that the result of Appellant's trial would be different if the disputed evidence had been produced" given trial counsel's extensive impeachment of the three witnesses as well as the "overwhelming" physical evidence connecting Hines

---

[53]   *Id.* at 5.
[54]   *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)).
[55]   *See Hines*, 2019 WL 1261755, at *2-5.
[56]   *See Simmons*, 590 F.3d at 231-32; 28 U.S.C. § 2254(d).

to the drugs.[57]  This conclusion conforms to the standards set by *Brady* and its progeny,[58] and is a reasonable application of those standards.  Therefore, I will deny habeas corpus relief.

## III.    CONCLUSION

For the foregoing reasons, Hines's petition for writ of habeas corpus will be denied with prejudice.  A certificate of appealability will not be issued because no reasonable jurist would disagree with my ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further.[59]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[57]  *Hines*, 2019 WL 1261755, at *5.
[58]  *See Turner*, 137 S. Ct. at 1893 (stating that evidence is material under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different").
[59]  *Buck v. Davis*, 580 U.S. __, 137 S. Ct. 759, 773 (2017) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).